IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WATER FOR COMMERCE FUND MANAGEMENT, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**PSK COLLECTIVE, LLC, et al.,**<br><br>Defendants. | Case No. 2:23-cv-02330-HLT-BGS |

### MEMORANDUM AND ORDER

This case arises out of a loan arrangement. Plaintiff Water for Commerce Fund Management, LLC, is headquartered in Kansas. One of Plaintiff's affiliates approached Defendants, PSK Collective, LLC, and Zahra Bahari, in New York about a loan. The parties executed three loan documents. Plaintiff alleges that Defendants defaulted, so Plaintiff filed this case in Kansas to collect.

Plaintiff asserts three claims (i.e., one claim under each loan document). Count 1 is against PSK and Counts 2 and 3 are against Bahari. Defendants move to dismiss or, in the alternative, to transfer venue. Doc. 30. They make several interrelated or alternative arguments. Ultimately, the Court finds that it lacks personal jurisdiction over PSK in Count 1 and Bahari in Count 3 and dismisses those claims without prejudice. The Court does not reach Defendants' arguments about venue, the forum selection clauses, or whether Count 3 fails to state a claim for these dismissed counts. Bahari consents to personal jurisdiction in the loan document underlying Count 2 and, for the reasons explained below, the Court denies without prejudice the request to transfer Count 2 to New York.

## I. BACKGROUND

Plaintiff is a Delaware limited liability company with its principal place of business in Kansas. Plaintiff's sole member is a Delaware corporation that also has its principal place of business in Kansas. Doc. 21 at ¶ 2. PSK is a limited liability company based in New York. Bahari is an individual domiciled in New York. *Id.* at ¶ 3-4.[1]

Plaintiff brings this case to enforce three loan documents. The underlying facts surrounding the loan terms and Defendants' alleged breach of those terms are not relevant to this order. Suffice it to say there are three claims, and each claim alleges a breach of one of the loan agreements. The portions of each agreement relevant to this order are discussed below.

### A. Loan Agreement

Count 1 alleges PSK's breach of the Loan and Security Agreement ("Loan Agreement"), in which Plaintiff provided PSK with a revolving loan. *Id.* ¶¶ 37-42. The Loan Agreement is between Plaintiff and PSK. Doc. 21-1 at 2. Bahari is listed as the Guarantor. *Id.* The Loan Agreement defines "Loan Party" as "Borrower and each Guarantor." *Id.* at 23. It includes an address in Leawood, Kansas, for Plaintiff. *Id.* at 16. The parties executed the Loan Agreement on September 14, 2021. *Id.* at 2.

Section 8.16 of the Loan Agreement contains the following language about governing law and jurisdiction:

> **(a)    Governing Law.** The laws of the State of New York, without application of New York's choice of law rules, will govern this Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby and thereby.

---

[1] Neither PSK nor Bahari are citizens of Delaware or Kansas, and thus the parties are diverse. Doc. 21 at ¶¶ 3-4.

> **(b)** **Submission to Jurisdiction.** Borrower irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against Lender in any way relating to this Agreement or the transactions contemplated hereby, in any forum other than the courts of the State of New York, and of the United States District Court for the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in any such New York court or, to the fullest extent permitted by Applicable Law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding will be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing herein will affect any right that Lender may otherwise have to bring any action or proceeding relating to this Agreement against Borrower or its properties in the courts of any jurisdiction. For any action brought by Lender in a jurisdiction other than the State of New York, and of the United States District Court for the Southern District of New York, Borrower reserves all defenses to jurisdiction available under Applicable Law.
>
> **(c)** **Waiver of Venue.** Borrower irrevocably and unconditionally waives, to the fullest extent permitted by Applicable Law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement in any such court referred to in Section 8.16(b). Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by Applicable Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

*Id.* at 19.

B.  **Guaranty Agreement**

Count 2 alleges Bahari's breach of the Limited Guaranty ("Guaranty Agreement"). Doc. 1 at ¶¶ 43-50. In the Guaranty Agreement, Bahari, as the "Guarantor," is liable for up to $300,000 owed by PSK to Plaintiff as security for the Loan Agreement. *Id.* ¶ 13; *see also* Doc. 21-2. Bahari signed the Guaranty Agreement on October 27, 2022. Doc. 21-2 at 7.

3

Relevant to this order, the Guaranty Agreements states that Bahari "consents to the in personam jurisdiction of the courts of the State of Kansas." Doc. 21-2 at 3. It also states that it "shall be governed by and construed in accordance with the laws of the State of Kansas." *Id.* at 6.

### C.   Validity Agreement

Count 3 seeks judgment enforcing Bahari's obligations under the Validity Agreement. Doc. 21 at ¶¶ 51-66. Under the Validity Agreement, Bahari as the "Indemnitor" agreed to indemnify Plaintiff from losses resulting from fraud or misrepresentation by PSK (as "Borrower") or Bahari. Doc. 21 at ¶ 15; *see also* Doc. 21-3 at 2. The Validity Agreement was executed on September 14, 2021, the same day as the Loan Agreement. Doc. 21-3 at 2.

The Validity Agreement includes the following provisions about choice of law, forum selection, and venue challenges.

> 7.   This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.
>
> 8.   [I]ndemnitor irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of the courts of New York County, New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or any other Loan Document to which each is a party, or for recognition or enforcement of any judgment, and each of the parties hereto irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined exclusively in such state courts or, to the fullest extent permitted by applicable Laws, in such federal courts. Indemnitor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Nothing in this Agreement or in any other Loan Document shall affect any right that Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against any Loan Party or any of its properties in the courts of any other jurisdiction. For any action brought by Lender in a jurisdiction other than the State of New York, and of the United States District Court for the Southern District of New York, Borrower reserves all defenses to jurisdiction available under Applicable Law.

4

> 9. Indemnitor hereto irrevocably and unconditionally waives, to the maximum extent permitted by applicable Law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in Section 7 hereof. Indemnitor hereto hereby irrevocably waives, to the maximum extent permitted by applicable Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

*Id.* at 4.[2]

## II.   STANDARD

Defendants move to dismiss under various subsections of Rule 12. The Court finds that personal jurisdiction is the dispositive issue and discusses that standard. The plaintiff has the burden of establishing personal jurisdiction over each defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). A court confronted with a motion to dismiss for lack of personal jurisdiction "has discretion to resolve such a motion in a variety of ways—including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). The plaintiff only needs to make a prima facie showing of personal jurisdiction when a court does not hold a hearing on an early Rule 12(b)(2) motion. *OMI Holdings*, 149 F.3d at 1091. A court determining personal jurisdiction based on the complaint and affidavits assumes the well-pleaded allegations in the complaint to be true unless they are contradicted by a defendant's affidavits. *Dudnikov*, 514 F.3d at 1070; *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). A court resolves factual disputes in the plaintiff's favor. *Shrader*, 633 F.3d at 1239.

---

[2] These provisions of the Validity Agreement are formatted in small caps. For readability purposes, the Court has converted the font. Any terms that are capitalized in the Validity Agreement are capitalized here.

## III. ANALYSIS

### A. The Court lacks personal jurisdiction over Defendants as to Counts 1 and 3.

Defendants move to dismiss Counts 1 and 3 for lack of personal jurisdiction over PSK (Count 1) and Bahari (Count 3).[3] The plaintiff establishes jurisdiction by satisfying both the state long-arm statute and constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). The analysis collapses in Kansas to just constitutional due process because the Kansas statute reaches as far as due process allows. *OMI Holdings*, 149 F.3d at 1090.

Due process allows a court to exercise personal jurisdiction over a non-resident if there are "minimum contacts" between the defendant and the forum state, such that exercising jurisdiction would not "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *World-Wide Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291 (1980). Defendants do not make any arguments that exercising jurisdiction would offend traditional notions of fair play and substantial justice, so the Court focuses on whether the minimum-contacts standard is satisfied.

Personal jurisdiction can be either "specific" or "general," depending on the nature of the defendant's contacts with a forum. *OMI Holdings*, 149 F.3d at 1090-91; *Shrader*, 633 F.3d at 1239.

---

[3] Defendants do not move to dismiss Count 2 for lack of personal jurisdiction. Count 2 is against Bahari and is based on the Guaranty Agreement. The Guaranty Agreement states that Bahari "consents to the in personam jurisdiction of the courts of the State of Kansas." Doc. 21-2 at 3. The other agreements do not include similar language. Neither side discusses how or whether this clause in the Guaranty Agreement impacts the analysis of whether the Court has personal jurisdiction over Bahari on Count 3. *See, e.g.*, *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (discussing "pendent personal jurisdiction" and stating that "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction"). Plaintiff does not allege that the Court has jurisdiction over Bahari on Count 3 because of the Guaranty Agreement or that Count 3 can "piggyback" on the personal-jurisdiction waiver in Count 2. Because the burden is on Plaintiff to establish that personal jurisdiction exists, *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (stating that a plaintiff must make a showing of personal jurisdiction "with respect to each of the claims alleged"), the Court evaluates the issue based only on the arguments presented, *see Botefuhr*, 309 F.3d at 1273 (stating that, "even where a court could legally exercise pendent personal jurisdiction over a claim, a district court retains discretion").

General personal jurisdiction is not alleged here, Doc. 35 at 5, so the Court focuses on whether the requisite minimum contacts exist to exercise specific personal jurisdiction over Defendants.

Minimum contacts for purposes of specific personal jurisdiction are those for which a defendant would "reasonably anticipate being haled into court" in the forum. *OMI Holdings*, 149 F.3d at 1091 (citing *World-Wide Volkswagen*, 444 U.S. at 297). The "minimum contacts" test for specific jurisdiction has two elements: "first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Shrader*, 633 F.3d at 1239 (internal quotation and citation omitted). The parties do not discuss or dispute the second element, and therefore the Court focuses on the first element.

In the contract context, the first requirement that a defendant "purposefully directed" activities at residents of the forum state is generally phrased as "purposeful availment." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 n.11 (10th Cir. 2017); *Dudnikov*, 514 F.3d at 1071 ("In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state."). Both phrases get at the same point, namely ensuring that an out-of-state party is not called into court based on "random, fortuitous, or attenuated contacts" with the forum. *Dudnikov*, 514 F.3d at 1071.

Entering a contract with a forum resident is not enough to create minimum contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it

cannot."); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) ("A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) ("The fact that Sporoptic made a contract with Pro Axess, which is located in Utah, is not enough on its own to allow a Utah court to exercise jurisdiction over Sporoptic."). "However, 'with respect to interstate contractual obligations, . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Pro Axess, Inc.*, 428 F.3d at 1277 (quoting *Burger King*, 471 U.S. at 473). Factors considered are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479; *Dental Dynamics*, 946 F.3d at 1230 (noting that the Supreme Court rejects "mechanical tests" and instead looks to the overall interaction between the parties).

> The amended complaint states the following regarding personal jurisdiction over PSK:
>
>> The Court has personal jurisdiction over Borrower: Borrower negotiated and executed the Loan and Security Agreement with Lender and thus knowingly created continuing obligations with a citizen of Kansas. Borrower's failure to make contractually-required payments caused foreseeable injuries to Lender in Kansas. And Borrower knew or should have known from the Loan and Security Agreement that Borrower was dealing with a Kansas-based lender and thus received fair notice that it might be subject to suit in Kansas for defaulting on its obligations pursuant to the Loan and Security Agreement.

Doc. 21 at ¶ 5. Similar allegations are included against Bahari as Indemnitor under the Validity Agreement:

> The Court has personal jurisdiction over Indemnitor: Indemnitor negotiated and executed the Validity Agreement with Lender and thus knowingly created continuing obligations with a citizen of

> Kansas. Borrower's and Indemnitor's intentional conduct, as alleged herein, caused foreseeable injuries to Lender in Kansas. And Borrower and Indemnitor knew or should have known from the Validity Agreement (executed on the same date as the Loan and Security Agreement) that Borrower and Indemnitor were dealing with a Kansas-based lender and thus received fair notice that they might be subject to suit in Kansas to enforce the indemnification obligations set forth in the Validity Agreement.

*Id.* ¶ 7. Plaintiff relies on these allegations to argue that it has established a prima facie case of personal jurisdiction against Defendants. Doc. 35 at 3.

These allegations are not sufficient to establish a prima facie case of personal jurisdiction over Defendants on Counts 1 and 3 based on the standards outlined above. First, the allegations that Defendants caused foreseeable injuries to a Kansas resident and that they had noticed they might be subject to suit in Kansas are legal conclusions and not supported by any actual well-pleaded facts. The Court does not need to accept conclusory allegations as true, nor do they suffice. *Dental Dynamics*, 946 F.3d at 1228 ("Conclusory allegations, however, need not be credited . . . and will not suffice to defeat a Fed. R. Civ. P. 12(b) motion." (internal quotation and citation omitted)).

Second, the allegations largely just state that Defendants entered contracts with a Kansas company. But that, standing alone, does not establish minimum contacts. *See Burger King*, 471 U.S. at 478; *Benton*, 375 F.3d at 1077; *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1281 (10th Cir. 2016) ("In short, defendants' suit-related conduct did not create any meaningful contacts with Colorado itself, and the fact that Anzures was affected in Colorado (because he resides there) is insufficient to authorize personal jurisdiction over defendants."); *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) (finding no personal jurisdiction based solely "on interaction with a plaintiff known to bear a strong

connection to the forum state" where the plaintiff was a Utah entity and the defendant directed correspondence at issue to Utah address).

Third, there are no facts alleged in the complaint that would support a conclusion that Defendants "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Pro Axess, Inc.*, 428 F.3d at 1277 (internal quotation and citation omitted). Nor are there any facts suggesting that, based on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," *Burger King*, 471 U.S. at 479, Defendants "purposefully availed" themselves of the privilege and obligations of doing business in Kansas. To the contrary, the only facts in the record—Bahari's declaration in support of the motion to dismiss, Doc. 30-1—suggest the opposite.[4]

The declaration states that PSK's principal and only place of business is New York. *Id.* at 1. Bahari also resides in New York. *Id.* PSK has never solicited or done business in Kansas, and Bahari has never been to Kansas. *Id.* at 2, 4. In August 2021, PSK received mail at its office in New York from a company called C2FO soliciting PSK to participate in a capital financing program. *Id.* at 2. Bahari discussed the offer with Michael Raine, a C2FO representative. *Id.* Raine traveled to New York to discuss the deal. *Id.* PSK representatives met with C2FO representatives several times, always in New York. *Id.* at 3-4. Defendants held Zoom calls with an individual residing in Connecticut. *Id.* at 3. No representatives of PSK or Bahari traveled to Kansas to meet with anyone. *Id.* at 4. Defendants were physically located in New York when they executed the loan documents using Adobe Sign. *Id.* at 3.

---

[4] Plaintiff does not address the facts in Bahari's declaration, other than to state that they do not contradict the allegations in the complaint and should not be considered. Doc. 35 at 3. But as stated, the allegations in the complaint are conclusions, not facts. Plaintiff has not come forward with any facts of its own that the Court could construe in its favor.

All individuals PSK interacted with were C2FO representatives acting on behalf of Plaintiff. *Id.* at 4. When PSK received the Loan Agreement and Validity Agreement in September 2021, they listed Plaintiff (Water for Commerce Fund Management) as the Lender, not C2FO. *Id.* at 2. A C2FO representative stated that Plaintiff was an affiliate of C2FO. *Id.*

C2FO's website states that it operates globally, with a headquarters in Kansas City, *id.* at 4, though it doesn't indicate whether that is Kansas City, Kansas, or Kansas City, Missouri.[5] Some individuals affiliated with C2FO state on their LinkedIn pages that they are based in New York. *Id.* Finally, the parties made the agreements to fund sales of women's apparel by PSK to Kohl's, which is based in Wisconsin. *Id.* at 4.

These facts do not demonstrate that PSK or Bahari purposefully availed themselves of doing business in Kansas by reaching out beyond their home state of New York to create a continuing obligation with a Kansas resident. To the contrary, these facts distinguish this case from others where minimum contacts were found. *See, e.g.*, *Benton*, 375 F.3d at 1077 ("Although the uranium transactions themselves would occur in places other than the state of Colorado, the business end of the transactions . . . would take place . . . partially in Colorado, where Mr. Benton has his principal place of business. Indeed, the instant dispute does not concern the uranium transactions, but the conduct of the parties in redefining their business relationship.").[6]

Plaintiff's reliance on *Burger King* is also misplaced. *Burger King* involved a 20-year franchise agreement with a plaintiff based in Florida for a restaurant located in Michigan. 471 U.S.

---

[5] Plaintiff's address in the Loan Agreement is in Leawood, Kansas, which is a suburb of Kansas City.

[6] The defendant in *Benton* also sent its employees to Colorado for due-diligence review. *Benton*, 375 F.3d at 1078 ("Cameco's sending employees to conduct the due diligence review at Mr. Benton's place of business demonstrates Cameco's willingness to engage in bilateral business activity taking place in Colorado."). Even still, the Tenth Circuit described the defendant's contact with the forum as "barely satisfying the minimum contacts standard." *Id.* at 1080. The Tenth Circuit went on to find that exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* at 1079-80.

at 464-65. The franchisees submitted to extensive oversight and regulation by the Florida-based Burger King. *Id.* at 465-66. The parties established the franchise agreements in Florida, and Florida law governed. *Id.* at 465-66.[7] The franchisees applied to Burger King at a Michigan office, but the application was forwarded to the Florida headquarters. *Id.* at 466. One franchisee attended management courses in Florida, and the franchisees purchased equipment from a Burger King affiliate in Florida. *Id.* at 466-67. The parties negotiated disputes in both Michigan and Florida. *Id.* at 467. When the agreement broke down, Burger King filed suit in Florida, where the defendants objected to personal jurisdiction. *Id.* at 468-69.

The Supreme Court stated the rule that a contract with an out-of-state party does not, standing alone, create minimum contacts with a forum. *Id.* at 478. And it reiterated the need for a fact-based analysis. *See id.* at 479. It subsequently found that the defendants had reached out to Florida to create a long-term franchise agreement "that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* at 479-80. The high degree of regulation from the Florida-based Burger King was not just "random, fortuitous, or attenuated" contacts. *Id.* at 480 (internal quotation and citation omitted). Although the contractually required payments were to be made in Florida, the Supreme Court considered that in light of the defendants' continued use of Burger King's proprietary trademarks and business information. *Id.* And although the Supreme Court noted that the defendant "knew that he was affiliating himself with an enterprise based primarily in Florida," it noted the parties' course of dealings, which were continually directed out of Florida. *Id.* at 480-81. Ultimately, because the defendant "established a substantial and continuing relationship with Burger King's Miami headquarters" and "received fair notice from

---

[7] Here, both the Loan Agreement and the Validity Agreement are governed by New York law.

12

the contract documents and the course of dealing that he might be subject to suit in Florida," the Supreme Court found personal jurisdiction in Florida would not offend due process. *Id.* at 487.

Plaintiff claims that the contacts alleged in this case are like those in *Burger King*. Doc. 35 at 3. The Court disagrees. The only allegations by Plaintiff here are that Defendants knew they were dealing with a Kansas company, and they failed to make payments to Plaintiff in Kansas. That is not similar to the facts in *Burger King*. Additionally, those facts would likely exist in any case where a party entered a contract with a forum resident, which is not enough for minimum contacts. *See Burger King*, 471 U.S. at 478; *Benton*, 375 F.3d at 1077. Ultimately, Plaintiff has borrowed some phrasing from the standards discussed in *Burger King* for its amended complaint, *see* Doc. 35 at 3-4, but the cases are not factually comparable. *See also Dudnikov*, 514 F.3d at 1073 (stating that "conclusory allegations, or a mere formulaic recitation of the elements of a cause of action, will not suffice to defeat a Fed. R. Civ. P. 12(b) motion" (internal quotation and citation omitted)).

The Court finds Plaintiff has not met its burden of showing that Defendants had the requisite minimum contacts with Kansas. Without minimum contacts, the Court lacks personal jurisdiction over Defendants as to Counts 1 and 3 and dismisses those claims.[8]

---

[8] Where jurisdiction is lacking, the Tenth Circuit has indicated that 28 U.S.C. § 1631 requires courts to consider whether it should transfer the case to a district where jurisdiction exists rather than dismiss without prejudice. *See Trujillo*, 465 F.3d at 1222-23. Section 1631 allows a court to transfer an action in lieu of dismissal "if it is in the interest of justice." Neither party specifically addresses § 1631, but a court can address it sua sponte. *Trujillo*, 465 F.3d at 1222. Here, the Court has considered whether transfer under § 1631 is in the interest of justice but finds dismissal is appropriate instead. First, while it appears personal jurisdiction likely exists over Defendants in New York, neither party has established that to be the case. The Court is disinclined to transfer if there is a chance jurisdiction is problematic in New York. Second, both the Loan Agreement and the Validity Agreement have different forum-selection clauses. The parties agree the clause in the Loan Agreement is permissive as to New York (the clause in the Validity Agreement may be a different story). But it also seems to include a provision waiving any objection by PSK to venue (though it does not preclude jurisdictional challenges by PSK). Doc. 21-1 at 19. In light of this, the Court is disinclined to pre-select a venue for Plaintiff to the extent it could opt to re-file Count 1 somewhere other than New York where jurisdiction nevertheless exists. Third, there is no dispute that the Court has personal jurisdiction over Bahari in Count 2. Transferring only Counts 1 and 3 under § 1631 would require severing those claims from Count 2. *See FDIC v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) (concluding that § 1631 allows for the partial transfer of an action when the district court indicates an intent to

### B. The Court does not reach the additional arguments on Counts 1 and 3.

Because the Court finds it lacks personal jurisdiction over Defendants in Counts 1 and 3, it does not reach the arguments about the forum selection clauses, improper venue, or Count 3 failing to state a claim.

### C. Count 2 remains pending.

As for Count 2, Defendants acknowledge that Bahari consented to personal jurisdiction in Kansas in the Guaranty Agreement. Doc. 30 at 13; *see also* Doc. 21-2 at 3. And they do not argue that venue is improper as to Count 2. *See* Doc. 30 at 13-14 (arguing that there is no basis for venue in Kansas only on Counts 1 and 3). But they argue that the forum selection clauses in both the Loan Agreement and the Validity Agreement require any claims under those agreements, i.e. Counts 1 and 3, to be brought in New York. *Id.* at 16-17.[9] And because Count 2 is a "smaller and dependent" claim, "efficiency and convenience strongly support transferring" Count 2 to New York as well. *Id.* at 13. Defendants alternatively argue that if personal jurisdiction and venue on all claims is proper in Kansas, the entire case should still be dismissed or transferred to New York under 28 U.S.C. § 1404(a) or the doctrine of forum non conveniens. *Id.* at 19-21.

Here, the Court has not transferred Counts 1 and 3. It has dismissed them for want of personal jurisdiction. Defendants have not sought any action as to Count 2 in the situation where

---

create two separate actions, such as through a Rule 21 severance). The parties don't discuss severance, and it doesn't seem to be in the interest of justice to have Counts 1 and 3 proceed in a different district via transfer under § 1631 while Count 2 remains pending in Kansas. Nor is it clear that the Court could otherwise piecemeal transfer all claims under different statutes in one action. *See G4 Innovations LLC v. Paccar, Inc.*, 2024 WL 492224, at *3-4 (D. Kan. 2024). It is true that dismissing two counts while retaining the third necessarily divides Plaintiff's claims. But that is the posture the case finds itself in, as discussed below. Further, to the extent Counts 1 and 3 are re-filed in a different forum, the transfer analysis for Count 2, perhaps in a renewed motion, would likely be meaningfully different and could possibly reunite the claims in one forum where jurisdiction exists as to them all. *See id.* at *1 n.1.

[9] Because the Court found personal jurisdiction lacking in Counts 1 and 3, it did not reach the arguments regarding the forum selection clauses in the Loan Agreement and Validity Agreement. *See supra* Section III.B.

Counts 1 and 3 are dismissed rather than transferred. They have not challenged personal jurisdiction or venue as to Count 2. Nor does there seem to be any independent reason, at this time, to transfer Count 2 alone to New York. Under the Guaranty Agreement, Bahari has submitted to personal jurisdiction here, and Kansas law applies to any claims based on the Guaranty Agreement. Accordingly, Count 2 remains pending in this case and in this forum.

Accordingly, to the extent Defendants' motion seeks transfer of Count 2, that request is denied on the current record. But this denial is without prejudice. The Court suspects that the parties would generally prefer to litigate all their claims together, though they disagree on the forum. This Court lacks personal jurisdiction to adjudicate Counts 1 and 3 here in Kansas, so it would seem Kansas may not be the right choice of forum to achieve that end. But to the extent Plaintiff refiles Counts 1 and 3 in a different forum where personal jurisdiction exists, the parties are free to revisit the issue of transfer for Count 2.[10]

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss the First Amended Complaint or, in the Alternative, to Transfer Venue (Doc. 30) is GRANTED IN PART and DENIED IN PART. The Court DISMISSES WITHOUT PREJDUICE Counts 1 and 3 for lack of jurisdiction. The Court DENIES AS MOOT the other arguments on those claims. The Court DENIES WITHOUT PREJUDICE the motion to transfer Count 2. That claim remains pending.

IT IS SO ORDERED.

Dated: April 18, 2024              /s/ *Holly L. Teeter*
                                                                HOLLY L. TEETER
                                                                UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff may also opt to dismiss Count 2 and refile it with the other claims in some other forum. Nothing in this order is intended to preclude that.